ALMON, Justice.
Petitioner, George Popwell, was convicted of burglary and sentenced to 20 years’ imprisonment. The Court of Criminal Appeals affirmed his conviction, 492 So.2d 675, without opinion. Popwell filed a petition for writ of certiorari, including a Rule 39(k), A.R.A.P., requested statement of facts sufficient to invoke review. This Court granted the writ to review the issue of whether Popwell was denied the right of compulsory process to obtain evidence for his defense.
The prosecution’s case was based entirely on the eyewitness testimony of the victim. Popwell was arrested after the victim selected a photograph of him from a book containing 15 pages of photographs. This identification took place approximately one year after the burglary. During a pre-trial hearing, Popwell moved for the court to enforce a subpoena duces tecum requiring a state’s witness to produce the photographs used in the identification. The court denied this motion. The issue is whether the trial court erred in overruling Popwell’s motion to produce the photographs used in the photographic lineup.
The victim arose early on a morning in late May 1982, and found a person standing beside the dining room table in her apartment. She observed him for a brief moment before he turned and left through an open window. She reported the incident to the Birmingham police, and approximately one month later she was summoned to the police department to view a photographic array or “mug book.” She selected two photographs from among the group of pictures but could not positively identify one as that of the intruder. She testified, “I picked out two people. One had characteristics, some characteristics of the person and the other had some other characteristics of the person, and I couldn't decide between the two.” One of the photographs selected was a picture of Popwell. However, no further investigative actions were taken at that time.
Almost a year later, while living at a different residence, the victim was attracted to a window of her home early one morning. She pushed back the curtain and for a brief moment saw a person’s face. She concluded that the person she saw was *516 the intruder she had confronted on the previous occasion. Shortly after this second sighting, she returned to the police department. She again reviewed a book of photographs, which was provided her by Sergeant Gaut of the Birmingham Police Department. On this occasion she positively identified a photograph of Popwell as being a picture of the intruder.[1]
A warrant for Popwell’s arrest was issued. He was arrested and a habeas corpus hearing was conducted on May 6 and 9, 1983. The mug book was produced by Sergeant Gaut and he was cross-examined on it by counsel for Popwell. According to the testimony of Sergeant Gaut, the mug book was in the same condition as when it was shown to the victim. The contents were photocopied at that time and then the photocopies were admitted into evidence.
Popwell contends that a subpoena was issued to require production of the mug book at trial. Although there is no evidence in the record before us of the subpoena having been served, Sergeant Gaut admitted having received the subpoena. However, the requested photographs were not produced. Popwell’s motion to enforce the subpoena was first raised during a pretrial hearing held the morning of the trial to determine the admissibility of the victim’s identification testimony:
“Q Well, where are the other photographs that were in this mug book on May 1, 1983?
“A They are in my office.
“Q Is that over at City Hall?
“A Yes, sir.
“Q Can you bring those to court?
“A Yes, sir. But those pictures have been since removed. They are in a stack of some sixty pictures now. I don’t know that the pictures that I have are the same ones that were in the mug book at the time it was shown. I’m sure that —I know that at least a dozen more pictures have been added to it. Like I say, they are right now in a stack. That mug book is being reassembled. I just don’t know exactly which ones were in it or were not in it at the time.
“Q Well, you, of course, are aware that the mug book was photocopied in Judge Garrett’s court at the time of the hearing we have been talking about?
“A Yes, sir. You should have a copy of the entire book, I believe.
“Q Of course, those are black and white photocopies that don’t very well show the exact pictures and features and so forth. From that photostatic copy could you pick out the pictures that were in the mug book?
“A Certainly. That photostatic copy, I believe, is a copy you made of the entire mug book.
[[Image here]]
“MR. MILLS: If it please the Court, we would ask that the photographs that were in the mug book that [the victim] saw be produced in court.
“THE COURT: That thing? That thing you’re holding? [the photocopies admitted during the habeas corpus hearing]
“MR. MILLS: No, sir. We would ask that the photographs themselves be.
“THE COURT: You’re asking an impossible thing. I deny it.
“MR. MILLS: Well, I understood ... Sgt. Gaut to say they are still in his office.
“THE COURT: He says — testified as follows — I’m not going to argue with you. The transcript will show I deny it. Proceed to your next point.
“MR. MILLS: Well, I would further make this point, your Honor, that the Court can’t examine what the witness was shown without seeing the photographs. I think we would have a right to have that produced as evidence for the Court to examine.
“THE COURT: Well, you note my overruling your objection. To quote this witness, this book which was shown over a year ago, says that there used to be forty-five pictures in it; *517 that the mug hook has changed over the years. He attempted to remove the six or eight pictures, seven from the two pages. The book has been discarded and is being changed and being brought up to date. All pictures, the whole stack of pictures, are outside the book. That’s that. I’m overruling you. Note your exception.”
As was brought out in the pre-trial hearing, Sergeant Gaut could have taken the photocopies of the original mug book, gone through the pictures in his possession, and at least substantially reproduced the original mug book. For all that appears, this could have been accomplished during the time between the pre-trial hearing held that morning and the time later that afternoon when Sergeant Gaut again took the stand.
The state’s case depended entirely on the eyewitness testimony of the victim. The jury should have been given the opportunity to view the photographs from which she made her identification in order to properly weigh her testimony. An accused has the right “to compulsory process for obtaining witnesses in his favor.” Const, of Alabama of 1901, art. I, § 6; Parsons v. State, 251 Ala. 467, 38 So.2d 209 (1948); Dowdy v. State, 39 Ala.App. 178, 96 So.2d 687 (1957).
The trial court denied the defense’s motion to enforce the subpoena because the court determined that the subpoena would be impossible to enforce. Such a determination could not be made without Sergeant Gaut’s first ascertaining whether the pictures were available. Because the mug book was highly relevant to Popwell’s defense, we think that the trial court erred in denying the motion to enforce the subpoena duces tecum.
The judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
MADDOX, JONES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.

. A few days later, the victim again reviewed photographs provided by the police department. This time she did not recognize any photograph as being a likeness of the intruder. The evidence does not disclose whether a picture of Popwell was included in this third photographic array.